**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL CASE NO. |
| v. | : | 1:20-cr-00272-ELR-RGV |
| | : | |
| GELLANI EUGENE LATORRE | : | |

## MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, AND ORDER

Defendant Gellani Eugene Latorre ("Latorre") is charged in a three-count indictment with conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 846; knowingly and intentionally distributing controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). [Doc. 34].[1]  Latorre has filed a "Motion for Return of Seized U.S. Currency," [Doc. 48 (emphasis and all caps omitted)], and a "Motion to Suppress Evidence Derived from Search of Residence," [Doc. 49 (emphasis and all caps omitted)].  Following a pretrial conference, see [Doc. 51], the government filed responses opposing Latorre's motions, [Docs. 55 & 56], and for the reasons that follow, it is

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

**RECOMMENDED** that Latorre's motion for return of seized currency, [Doc. 48], and his motion to suppress evidence, [Doc. 49], be **DENIED**.

## I.  STATEMENT OF FACTS

On January 31, 2020, Postal Inspector Jessica Speers ("Inspector Speers") of the United States Postal Inspection Service ("USPIS") submitted an affidavit, see [Doc. 56-2], and obtained a search warrant from the United States District Court for the Northern District of Georgia for a residence located at 6336 Rooks Pass SE, Mableton, Georgia, authorizing a search for evidence relating to violations of 21 U.S.C. §§ 846 (drug conspiracy), 841 (possession with the intent to distribute controlled substances), and 843 (use of a communication facility), see [Doc. 56-1]. In the affidavit, Inspector Speers asserted that on January 24, 2020, Customs and Border Protection authorities in Puerto Rico intercepted two U.S. Postal Service Priority Mail packages that had arrived from St. Thomas, United States Virgin Islands.  [Id. ¶ 14].  Inspector Speers explained that Priority Mail parcels do not require a signature upon delivery, [id. ¶ 21], and based on her training and experience, drug traffickers prefer to use delivery services such as Priority Mail to send controlled substances because of their speed, reliability, and the ability to track an article's progress to the intended delivery point, [id. ¶ 5b].

According to the affidavit, the two intercepted Priority Mail packages had the return address of "Youth Arise, 18 Hospital Line, St. Thomas, VI 00803 and

were addressed to Laura Richards, 1440 SW 104th Path, Apartment 5-203, Miami, FL 33174." [Id. ¶ 14 (internal marks)]. Based on her training and experience, Inspector Speers noted that the U.S. Virgin Islands was a "source area for controlled substances," specifically cocaine. [Id. ¶ 20]. Inspector Speers averred that both packages "were selected for examination and each was found to contain various pastries, food items and a large sheet cake," and that a "white powdery substance was found to be concealed inside each of the sheet cakes," which upon field testing was determined to contain "cocaine hydrochloride." [Id. ¶ 14]. She also averred that "[o]ne bundle of the suspected cocaine was found to weigh approximately 8.5 kilograms and the other was found to weigh approximately 9.8 kilograms."[2] [Id.].

Inspector Speers explained in the affidavit that on January 28, 2020, law enforcement agents in Miami, Florida, received the two Priority Mail packages and their contents, and Special Agents of Homeland Security Investigations ("HSI") and USPIS Postal Inspectors then prepared the Priority Mail packages for a controlled delivery to the address listed on the packages, "1440 SW 104th

---

[2] The government indicates that Inspector Speers "later received the original package contents and determined that the weight of the actual cocaine totaled 4.12 kilograms between the two packages." [Doc. 56 at 2 n.1]. "The 'bundle' weights described in the search warrant affidavit included the cake, pan, and packaging." [Id.].

Path, Apartment 5-203, Miami, Florida 33174." [Id. ¶ 15]. According to the affidavit, agents removed the cocaine from the cakes and replaced it with a "sham material" that had the appearance of cocaine. [Id.]. Pursuant to a federal search warrant issued in the Southern District of Florida, agents also inserted electronic monitoring devices in each of the packages. [Id.]. Inspector Speers explained that the electronic monitoring device contained a GPS monitor and a "break-wire" monitor, and when the inner part of the package containing the sham was opened and the wire was broken, the device would send a radio signal to agents to indicate that the wire had been broken. [Id. ¶ 25].

On January 29, 2020, HSI Special Agents and Postal Inspectors conducted a controlled delivery of the Priority Mail packages to a male suspect at the target delivery address of "1440 SW 104th Path, Apartment 5-203, Miami, Florida 33174." [Id. ¶ 16]. Inspector Speers averred that upon delivery, the male suspect took both Priority Mail packages into the delivery address apartment. [Id.]. After several hours with no indication the Priority Mail packages had been opened, the male suspect exited the apartment with the Priority Mail packages and drove to the Tamiami Post Office, where he carried the Priority Mail packages into the post office and removed the labels from the packages and replaced them with labels depicting a new delivery address for mailing. [Id.]. The new delivery address was "Jason Peterson, 6336 Rooks Pass Southeast, Mableton, GA 30126."

[Id. ¶ 19a-b (internal marks omitted)].  The return address was listed as "Jahne Massac, 1440 SW 104 Path, Apt. 203, Miami, FL 33174."     [Id. (internal marks omitted)].

The Priority Mail packages depicting the new delivery address were intercepted by law enforcement that same day and sent to Inspector Speers in Atlanta.  [Id. ¶¶ 17-18].  Upon analysis of the addresses depicted on the parcels in a law enforcement database, Inspector Speers found no one by the name "Jahne Massac" to be associated with the return address of 1440 SW 104th Path, Apt. 203, Miami, Florida 33174, and no one by the name "Jason Peterson" to be associated with the delivery address of 6336 Rooks Pass SE, Mableton, Georgia 30126.  [Id. ¶¶ 22-23 (internal marks omitted)].  Inspector Speers explained that, based on her training and experience, drug traffickers often send controlled substances to fictitious or incomplete names to attempt to disassociate themselves from the controlled substances.  [Id. ¶ 5d].

The affidavit further described that on January 31, 2020, at approximately 10:55 a.m., a Postal Inspector in an undercover capacity as a uniformed United States Postal Service carrier, delivered the Priority Mail packages to a male

suspect, later identified as Latorre,[3] at the target residence located at "6336 Rooks Pass SE, Mableton, Georgia 30126." [Id. ¶¶ 24, 26, 31]. According to the affidavit, Latorre met the undercover Postal Inspector at the front door and took both Priority Mail packages inside the residence. [Id. ¶ 26]. When the Priority Mail packages were delivered, each contained the electronic monitoring device and sham substance that resembled cocaine. [Id. ¶¶ 24-25]. After delivering the Priority Mail packages to the residence, law enforcement agents monitored the electronic tracking devices in order to determine whether either of the parcels had been opened, and almost immediately following the delivery, an electronic monitor sent a radio signal to agents indicating that one of the Priority Mail packages had been opened. [Id. ¶ 27].

Inspector Speers explained that at 11:03 a.m., Latorre exited the residence carrying two boxes, one of which was open. [Id. ¶ 28]. He placed the two boxes in a silver Mercedes sedan parked in the driveway, walked back inside the residence, and about a minute later, he walked back out of the residence, got in the Mercedes and departed the residence. [Id.]. Inspector Speers averred that

---

[3] The government indicates that "[Inspector] Speers identified [the subject at the residence] as Eugene Latorre Gellani, mistakenly transposing the order of his names based on the placement of those names on an out-of-state identification card that [he] presented." [Doc. 56 at 4 n.2 (citation omitted)].

at approximately 11:09 a.m., Latorre was observed standing outside of the Mercedes on Oakdale Ridge Place in Mableton, holding an open box near a neighborhood retention pond. [Id. ¶ 29]. Latorre then put the open box back into his Mercedes, got back into the vehicle, and drove a short distance to Oakdale Ridge Court where he was detained by law enforcement. [Id. ¶¶ 29-30]. The Mercedes Latorre had been driving was impounded upon his arrest, and an inventory of the vehicle was conducted. [Id. ¶ 30]. Inside the Mercedes, law enforcement officers located both Priority Mail packages, one of which was open. [Id.]. Officers also found multiple shipping labels and a Glock handgun with multiple magazines and several cell phones. [Id.].

Based on the foregoing facts, Inspector Speers asserted that probable cause existed to search the residence at 6336 Rooks Pass SE, Mableton, Georgia 30126 "for evidence of a crime and contraband, fruits of crime, or items illegally possessed property, or designed for use, intended for use, or used in committing a crime, concerning [drug trafficking]." [Id. ¶ 33]. Specifically, Inspector Speers sought and obtained a warrant to search the residence for any portion or piece of the subject Priority Mail packages; controlled substances; drug paraphernalia and equipment; documents related to shipments, orders, possession or transportation of packages of controlled substances or packages; books and records of contacts related to drug trafficking; bulk currency; financial records;

firearms, ammunition, and firearm accessories; and electronic communication devices.  [Id. at 17].

During the execution of the search warrant at the residence, agents located, among other things, latex gloves and cookies wrapped in plastic, a food-saver machine (used to vacuum-seal food or other substances in plastic), a lockbox for the Glock handgun found in the Mercedes, approximately $34,000 in United States currency inside a duffel bag, an Amazon tablet, a Dell Inspiron laptop, miscellaneous documents addressed to Latorre, and multiple receipts from USPS stores.  See [Doc. 49 at 1; Doc. 56 at 6].

## II.  DISCUSSION

### A.   Motion to Suppress Evidence, [Doc. 49]

Latorre moves to suppress evidence seized from the search of the residence, contending that "the search warrant affidavit failed to establish the requisite nexus between the place to be searched and the evidence to be sought."  [Doc. 49 at 2]. Specifically, he argues that "the search warrant affidavit contained no evidence that [he] distributed narcotics from the residence located at 6336 Rooks Pass, that he used it to store narcotics, or that any suspicious activity had taken place there." [Id. at 6].  He asserts that "[t]he affidavit did not suggest that a reliable confidential informant had purchased drugs there or that the police had ever conducted surveillance at [the] residence."  [Id.].  He also points out that "[t]he sham cocaine

had been recovered from [the] residence before the search warrant had been applied for," and he argues that "[t]here was no reliable evidence connecting the sham cocaine to the residence." [Id.]. Thus, Latorre contends that "[t]he affidavit failed to include facts that directly connected the residence with the sham cocaine or any other alleged drug activity." [Id.]. The government responds that Latorre's motion "should be denied because the warrant authorizing the search of the [r]esidence was based on sufficient probable cause." [Doc. 56 at 9].[4]

**1.** *Standing*

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. However, "'Fourth Amendment rights are personal rights which . . . may not be vicariously asserted.'" Rakas v. Illinois, 439 U.S. 128, 133-34 (1978) (citations omitted) (quoting Alderman v. United States, 394 U.S. 165, 174 (1969)). "Fourth Amendment jurisprudence

---

[4] The government also argues that Latorre "has failed to establish that he has standing to bring a motion to suppress the evidence seized at the [r]esidence" as his "motion alleges, without offering evidence, that 'he resides in the premises that were searched' or, '[a]lternatively, he has standing based on the fact that he was an overnight guest.'" [Doc. 56 at 8 (last alteration in original) (citation omitted)]. The government contends that "this vague and conclusory argument is insufficient to establish that [Latorre] had a legitimate expectation of privacy." [Id.]. Latorre did not file a reply in response to the government's arguments about standing.

requires that one challenging as unreasonable a search or seizure must have 'standing,' i.e., a legitimate expectation of privacy in the premises searched." United States v. McCray, CRIMINAL ACTION FILE NO. 1:15-cr-212-WSD/AJB, 2017 WL 9472888, at *6 (N.D. Ga. June 15, 2017), adopted by 2017 WL 3141172, at *14 (N.D. Ga. July 25, 2017) (citing United States v. Gonzalez, 940 F.2d 1413, 1420 n.8 (11th Cir. 1991)).   Consequently, to prevail on a claim that the government conducted an unconstitutional search under the Fourth Amendment, Latorre must first establish that he had a legitimate expectation of privacy in the place searched or evidence seized that society is prepared to recognize as reasonable.  Rakas, 439 U.S.  at 133-134; see also California v. Ciraolo, 476 U.S. 207, 211 (1986) (citation omitted) (standing to challenge search requires a subjective expectation of privacy that society would recognize as legitimate); United States v. Baron-Mantilla, 743 F.2d 868, 870 (11th Cir. 1984) (per curiam) (citation omitted).  That is, Latorre may challenge a search on Fourth Amendment grounds if "'(1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable.'"  United States v. Bushay, 859 F. Supp. 2d 1335, 1361 (N.D. Ga. 2012), adopted at 1354 (quoting United States v. Harris, 526 F.3d 1334, 1338 (11th Cir. 2008) (per curiam)).  Thus, Latorre "must establish both a subjective and

an objective expectation of privacy,"[5] and he "bears the burden of showing a legitimate expectation of privacy in the area searched." <u>United States v. Suarez-Blanca</u>, Criminal Indictment No. 1:07–CR–0023–MHS/AJB, 2008 WL 4200156, at *6 (N.D. Ga. Apr. 21, 2008) (citations omitted); <u>see also</u> <u>United States v. Jefferson</u>, Criminal Case No. 1:09–CR–324–WSD–RGV, 2010 WL 3928049, at *4 (N.D. Ga. May 25, 2010), adopted by 2010 WL 3927874, at *9 (N.D. Ga. Oct. 4, 2010), <u>aff'd</u>, 451 F. App'x 833 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted) ("In other words, [defendant] has the burden to establish that he has standing to challenge the search or seizure.").

Although Latorre asserts in his motion that he has standing, <u>see</u> [Doc. 49 at 1], he has "presented no evidence supporting any reasonable expectation of privacy in the [residence]," and his "failure to present any evidence indicating an expectation of privacy in the [residence] means that he has not met his baseline

---

[5] "The subjective prong is a factual inquiry, and requires that a person exhibit an actual expectation of privacy," while the "objective prong is a question of law, and requires that the privacy expectation be one that society is prepared to recognize as reasonable." <u>Bushay</u>, 859 F. Supp. 2d at 1362 (citations and internal marks omitted); <u>see also</u> <u>United States v. Durdley</u>, 436 F. App'x 966, 968 (11th Cir. 2011) (per curiam) (unpublished). "An expectation of privacy is reasonable if it has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." <u>United States v. Dixon</u>, 901 F.3d 1322, 1338 (11th Cir. 2018) (citation and internal marks omitted).

burden to show standing to contest the search," United States v. Jenkins, 743 F. App'x 636, 648 (6th Cir. 2018) (unpublished) (footnote and citation omitted); see also United States v. Caymen, 404 F.3d 1196, 1200 (9th Cir. 2005) (finding defendant failed to "carry[y] his burden of proof to establish an 'acceptable' expectation of privacy in the laptop" where he "did not submit an affidavit or other evidence supporting his claim that he had honestly purchased and owned the laptop" and while he "did make such a claim to the police during their search of his room, that claim was, of course, unsworn"); United States v. Bourassa, CRIMINAL ACTION FILE NO. 4:18-CR-0003-MLB-WEJ-1, 2019 WL 7559294, at *8 & n.12 (N.D. Ga. May 20, 2019), adopted in part by 2019 WL 5288137, at *8 (N.D. Ga. Oct. 18, 2019) (rejecting defendant's argument that he had standing to contest the search of the residence as both an overnight guest and as a tenant where he failed to support either argument with any evidence and they lacked support in the record); McCray, 2017 WL 9472888, at *10 (noting that defendant "has the burden and did not provide sufficient information about his relationship with the vehicle"). Nevertheless, the Court will proceed to the merits of his arguments for suppression of the evidence seized from the residence as the government has addressed them in its response to his motion to suppress. [Doc. 56 at 9-13].

2.   *Probable Cause*

"The Fourth Amendment requires that a search warrant be issued only when there is probable cause to believe that an offense has been committed and that evidence exists at the place for which the warrant is requested." United States v. Betancourt, 734 F.2d 750, 754 (11th Cir. 1984) (citing Zurcher v. Stanford Daily, 436 U.S. 547, 558 (1978)); see also United States v. Cadet, Criminal Action Nos. 1:11-CR-00522-WBH-LTW, 1:11-CR-00113-WBH-LTW, 2013 WL 504892, at *4 (N.D. Ga. Jan. 16, 2013), adopted by 2013 WL 504815, at *1 (N.D. Ga. Feb. 8, 2013), aff'd, 574 F. App'x 917 (11th Cir. 2014) (per curiam) (unpublished) (citation omitted). That is, "[p]robable cause to search a residence requires some nexus between the premises and the alleged crime." United States v. Joseph, 709 F.3d 1082, 1100 (11th Cir. 2013) (citation and internal marks omitted).   "Probable cause deals 'with probabilities [which are] . . . the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Illinois v. Gates, 462 U.S. 213, 241 (1983) (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)); see also United States v. Spann, No. 15–20070, 2015 WL 1969111, at *3 (S.D. Fla. May 1, 2015), aff'd, 649 F. App'x 714 (11th Cir. 2016) (per curiam) (unpublished) (citation omitted).

The Eleventh Circuit has explained the Court's review of the sufficiency of a search warrant as follows:

When called upon by law enforcement officials to determine the legitimacy of search warrants and their supporting affidavits, issuing magistrates and reviewing courts alike must strike a delicate balance between constitutional guarantees against excessive intrusions into areas of individual freedom and the Government's need to access and to secure relevant evidence in criminal prosecutions.  In particular, issuing magistrates are given the unenviable task of making "firing line" decisions that attempt to encourage availment of the warrant process while simultaneously striving to protect citizens from unwarranted governmental interference.   In recognition of the difficulty inherent in discharging this responsibility, reviewing courts lend substantial deference to an issuing magistrate's probable cause determinations.

United States v. Miller, 24 F.3d 1357, 1363 (11th Cir. 1994).  "Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner[.]"  Id. at 1361 (citation omitted).  Instead, "a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations."  Id. (citation omitted); see also United States v. McCullough, Criminal Indictment No. 1:11–CR–136–JEC/AJB–01, 2012 WL 11799871, at *13 (N.D. Ga. Oct. 9, 2012), adopted by 2014 WL 3955556, at *2 (N.D. Ga. Aug. 13, 2014) (citations omitted).  Furthermore, "[t]he fact than an innocent explanation may be consistent with the facts alleged . . . does not negate

probable cause." United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985) (citations omitted); see also Adams v. Williams, 407 U.S. 143, 149 (1972) (citation omitted).[6]

The facts set forth in Inspector Speers' affidavit provided probable cause to support issuance of the search warrant for the residence at 6336 Rooks Pass SE, Mableton, Georgia, as the affidavit established a nexus between the residence and the crimes under investigation by virtue of the delivery of the Priority Mail packages containing the substituted sham cocaine to the residence, followed almost immediately thereafter by a signal from an electronic monitor indicating that one of the packages had been opened inside the residence.  [Doc. 56-2 ¶¶ 16, 19, 24-28].  In particular, the affidavit demonstrated that the Priority Mail packages delivered to the residence and accepted by Latorre originally contained multiple kilos of cocaine hidden inside sheet cakes, [id. ¶ 14], which were removed upon inspection and replaced with sham cocaine for a controlled

---

[6] "[T]he term probable cause, . . . means less than evidence which would justify condemnation. . . . It imports a seizure made under circumstances which warrant suspicion . . . Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision." New York v. P.J. Video, Inc., 475 U.S. 868, 876 (1986) (alterations in original) (citations and internal marks omitted).  That is, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules," Gates, 462 U.S. at 232, and "[c]ertainty has no part in a probable cause analysis," United States v. Frechette, 583 F.3d 374, 380 (6th Cir. 2009) (citation omitted).

delivery to a residence in Miami, [id. ¶ 15], where the packages were not opened, but instead, within a few hours, readdressed for delivery to the residence at 6336 Rooks Pass SE, Mableton, Georgia, [id. ¶ 16], where Latorre received them and almost immediately opened one of the packages, [id. ¶¶ 26-27, 31]. In the affidavit, Inspector Speers explained, based on her training and experience, that drug traffickers use Priority Mail packages to deliver controlled substances for distribution, [id. ¶ 5], and the Priority Mail packages in this instance originated from the U.S. Virgin Islands, [id. ¶ 14], a known source area for controlled substances, specifically cocaine, [id. ¶ 20]. Moreover, upon inspecting the Priority Mail packages that were readdressed for delivery to 6336 Rooks Pass SE, Mableton, Georgia, Inspector Speers learned that no one by the name "Jahne Massac" was associated with the return address in Miami, and no one by the name "Jason Peterson" listed on the packages was associated with the delivery address of 6336 Rooks Pass SE, Mableton, Georgia 30126. [Id. ¶¶ 22-23]. Inspector Speers explained that drug traffickers often send controlled substances to fictitious or incomplete names to attempt to disassociate themselves from the controlled substances. [Id. ¶ 5d]. Latorre accepted delivery of the Priority Mail packages addressed to "Jason Peterson" at the residence and promptly opened one of the packages inside the residence. [Id. ¶¶ 26-27, 31]. Thus, Latorre's contention that "[t]he affidavit failed to include facts that directly connected the

residence with the sham cocaine or any other alleged drug activity," [Doc. 49 at 6], is without merit.

Latorre argues that "the search warrant affidavit contained no evidence that [he] distributed narcotics from the residence located at 6336 Rooks Pass, that he used it to store narcotics, or that any suspicious activity had taken place there," [id.], but a common sense reading of the facts set forth in the affidavit refutes his contention as the affidavit supplied probable cause to believe that he used the residence to receive a shipment of two Priority Mail packages that originally contained multiple kilos of cocaine, [Doc. 56-2 ¶ 14], an amount consistent with distribution, see United States v. Hester, 205 F. App'x 713, 717 (11th Cir. 2006) (per curiam) (unpublished), on the day he personally accepted delivery of the Priority Mail packages addressed to another individual not associated with the residence and almost immediately opened one of them inside the residence, [Doc. 56-2 ¶¶ 22-27].  As for his argument that probable cause to search the residence was lacking since "[t]he sham cocaine had been recovered from [the] residence before the search warrant had been applied for," [Doc. 49 at 6], the government persuasively points out that although Latorre drove away from the residence with the Priority Mail packages after opening one of them while inside the residence, "there was probable cause to believe that evidence of drug trafficking activity, including any portion or piece of the packages, and

documents related to shipments, orders, possession or transportation of packages, was likely to be found at the [r]esidence," [Doc. 56 at 11 (citation omitted)]; see also United States v. Storey, No. 13-CR-0156-CVE, 2013 WL 5937435, at *6 (N.D. Okla. Nov. 5, 2013), aff'd, 595 F. App'x 822 (10th Cir. 2014) (unpublished) (holding that "probable cause existed to search the residence once the package was accepted even if the package was no longer on the premises"), particularly since law enforcement agents found multiple shipping labels in the Mercedes Latorre was driving when it was inventoried, along with a Glock handgun with multiple magazines and several cell phones, [Doc. 56-2 ¶ 30], which are tools of the drug distribution trade, see United States v. Smith, 918 F.2d 1501, 1509 (11th Cir. 1990) (citations and internal marks omitted) (firearms are "tools of the [drug] trade"); United States v. Lisbon, 835 F. Supp. 2d 1329, 1363 (N.D. Ga. 2011), aff'd, 559 F. App'x 940 (11th Cir. 2014) (per curiam) (unpublished) (citations omitted) (explaining that "the Eleventh Circuit and numerous other federal appellate courts recognize that cell phones are 'a known tool of the drug trade'").

Although Latorre asserts that probable cause to search the residence was lacking because "[t]he affidavit did not suggest that a reliable confidential informant had purchased drugs there or that the police had ever conducted surveillance at [the] residence," [Doc. 49 at 6], these are merely methods and

sources of investigation that law enforcement may use, but neither is necessary to establish probable cause to support a search warrant, see United States v. Hatcher, 300 F. App'x 659, 663 (11th Cir. 2008) (per curiam) (unpublished) (last alteration in original) (citation and internal marks omitted) (holding district court did not err in finding probable cause to search residence where affidavit contained information that defendant was observed on a previous occasion retrieving an identical package to the one that was intercepted by law enforcement from a UPS store just days earlier that was also sent from Los Angeles to the same address, that defendant left with that package in a car linked to the residential address, that an officer saw the car parked at the residential address, and that a co-defendant had an outstanding warrant for drug trafficking, since "a practical, common-sense assessment . . . support[ed] the conclusion that there [was] a fair probability that evidence of drug trafficking would be found at the residence"); United States v. Thomas, 266 F. App'x 532, 533–34 (9th Cir. 2008) (unpublished) (finding probable cause supported search warrant for residence based on controlled delivery of package containing more than a kilogram of cocaine where recipient of delivery and alerting device indicated that the package had been opened after recipient exited with the package and was arrested near the entrance of the residence); United States v. Armstrong, 69 F. App'x 509, 511–12 (3d Cir. 2003) (unpublished) (finding

probable cause to arrest defendant after a controlled delivery of a package containing two kilograms of cocaine and one ounce of crack to a residence where package was opened inside and defendant was in close proximity to the package).   Here, for the reasons explained, the investigation that was summarized in the affidavit supplied "probable cause to believe that an offense ha[d] been committed and that evidence exist[ed] at the place for which the warrant [was] requested."   <u>Betancourt</u>, 734 F.2d at 754.   Accordingly, Latorre's motion to suppress evidence seized from the residence is without merit.

### 3.   *Good Faith Exception*

Alternatively, the government argues that, even if the search warrant in this case were found to be invalid, suppression of the evidence seized from the residence would not be required because the law enforcement agents who executed the warrant reasonably relied in good faith on its validity.   [Doc. 56 at 11-13].   Under <u>United States v. Leon</u>, 468 U.S. 897, 919-21 (1984), "the exclusionary rule should not be applied to exclude evidence seized pursuant to a defective search warrant if the officers conducting the search acted in 'objectively reasonable reliance' on the warrant and the warrant was issued by a detached and neutral magistrate."   <u>United States v. Sharp</u>, Civil Action File No. 1:14-cr-229-TCB, 2015 WL 4641537, at *14 n.18 (N.D. Ga. Aug. 4, 2015), adopted at *5 (citations and

internal marks omitted); see also United States v. Robinson, 336 F.3d 1293, 1295-96 (11th Cir. 2003) (citation omitted).

There are four situations in which the Leon good-faith exception does not apply and suppression is warranted:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient-i.e., in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid.

United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002) (citation and internal marks omitted).  With respect to the good faith exception, Latorre largely repeats his arguments about the absence of probable cause to support the search warrant and contends that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," since Inspector Speers "did not assert that she had seen or had knowledge of any evidence of a crime inside the [] residence other than the two packages containing sham cocaine that had already been recovered outside of [the] residence before the search warrant had been applied for," [Doc. 49 at 7 (citation and internal marks omitted)].  For the reasons already discussed, there was sufficient probable cause

set forth in the affidavit to support issuance of the search warrant for the residence, and it certainly was not "so lacking . . . as to render official belief in its existence entirely unreasonable."  Martin, 297 F.3d at 1313 (citation and internal marks omitted).

In addition, none of the other situations precluding the good faith exception apply as there is nothing in the record that even hints that the Magistrate Judge who reviewed the affidavit and signed the search warrant engaged in any misconduct or abrogation of judicial responsibility.  Moreover, the warrant is facially valid in that it describes in sufficient detail the things to be seized, the location for the search, and it is signed by a Magistrate Judge.  See United States v. Travers, 233 F.3d 1327, 1330 (11th Cir. 2000) (citation omitted) (finding warrant "was not 'so facially deficient—i.e., failing to particularize the place to be searched or the things to be seized—that the executing officers could not have reasonably presumed it to be valid'").  Accordingly, the agents executing the warrant were justified in believing in its validity, and evidence seized during the execution would not be subject to suppression under the good faith exception even if the warrant were found to lack probable cause.  Massachusetts v. Sheppard, 468 U.S. 981, 988-89 (1984).  Accordingly, for the foregoing reasons, it is **RECOMMENDED** that Latorre's motion to suppress evidence, [Doc. 49], be **DENIED**.

**B.**   **Motion for Return of Seized Property, [Doc. 48]**

Latorre moves for entry of "an Order directing the government to return the $34,000.00 in U.S. Currency seized from [him] on January 31, 2020, on the grounds that the $34,000.00 has no evidentiary value in the present case[.]" [Doc. 48 at 1]. Latorre asserts that the $34,000.00 seized from his residence pursuant to the search warrant "is not evidence of criminal conduct," but instead "represents a portion of the proceeds of a personal injury case settlement [he] had against the City of West Palm Beach, Florida." [Id. at 1-2]. The government opposes the motion, [Doc. 55], arguing that the $34,000.00 in U.S. Currency seized from Latorre's residence pursuant to the search warrant is subject to forfeiture in this case as it has "filed a Bill of Particulars to add the seized $34,000.00 in United States currency to the forfeiture provision of the Indictment as property subject to forfeiture as proceeds of the drug trafficking violations for which [Latorre] is charged," [id. at 2 (citing [Doc. 54])].

Although Latorre has not specified the basis of his motion for return of property, see [Doc. 48], Rule 41(g) of the Federal Rules of Criminal Procedure provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return" by filing a motion "in the district where the property was seized." Fed. R. Crim. P. 41(g). "'If a motion for return of property is made while a criminal prosecution is pending,

the burden is on the movant to show that he . . . is entitled to the property.'' United States v. Marabini, No. 06-80021-CR, 2006 WL 3921906, at *6 (S.D. Fla. Dec. 28, 2006) (quoting United States v. Chambers, 192 F.3d 374, 377 (3d Cir. 1999)); see also United States v. Oduu, 564 F. App'x 127, 130 (5th Cir. 2014) (per curiam) (unpublished) (footnote omitted).  However, "a Rule 41(g) motion is properly denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture, or the government's need for the property as evidence continues." United States v. Garcon, 406 F. App'x 366, 369 (11th Cir. 2010) (per curiam) (unpublished) (citation and internal marks omitted); see also McCray, 2017 WL 3141172, at *12 (citation omitted).

The $34,000.00 in U.S. currency seized from Latorre's residence has been identified in the Bill of Particulars filed by the government as being subject to forfeiture as proceeds of drug trafficking pursuant to the forfeiture allegations of the indictment.  See [Doc. 54].  Thus, Latorre "is entitled to challenge the forfeiture on the merits during the forfeiture phase of his criminal trial," Panos v. United States, Civil Action No. 13-242, 2014 WL 317784, at *3 (W.D. La. Jan. 27, 2014) (footnote omitted), but he "is not entitled to a post-restraint, pretrial hearing on the issue of probable cause where a grand jury has determined that specific property is subject to forfeiture," United States v. Travers, CASE NO. 96-477-CR-UNGARO-BENAGES(s)(s), 1997 WL 35430441, at *2 (S.D. Fla. Apr. 8, 1997)

(citation omitted); see also United States v. Guba, No. 1:09-CR-17-SPM/AK, 2009 WL 2606454, at *1–2 (N.D. Fla. Aug. 18, 2009) (denying Rule 41(g) motion where property was subject to forfeiture allegations of indictment); Fed. R. Crim P. 32.2(b)(1)(A).  "Ordinarily, the inclusion of the forfeiture allegation in the indictment is sufficient to bar the return of money unless and until a trier of fact determines whether the funds are subject to forfeiture," and here, the "[i]ndictment includes a forfeiture allegation" and the "[g]overnment will bear the burden of proof of its right to the cash during the forfeiture phase of the trial," but Latorre "has shown no good reason for this Court to make this determination before trial."   United States v. Durante, Criminal Action No. 11–277 (SRC), 2012 WL 2863490, at *1 (D.N.J. July 11, 2012) (citation omitted); see also United States v. Hills, Case No. 1:16CR329, 2018 WL 1621088, at *8 (N.D. Ohio Apr. 4, 2018) (citation omitted) (holding that defendant's remedy when seeking return of seized currency subject to forfeiture allegations in an indictment "lies in contesting forfeiture at the conclusion of the criminal proceedings"); United States v. Chicago, CRIMINAL NO. 15-00168-CG, 2017 WL 2963475, at *3 (S.D. Ala. July 11, 2017) (emphasis, citations, and internal marks omitted) (explaining that "the indictment . . . need only provide general notice that the government is seeking forfeiture, without identifying the specific property being sought" and "if a question of notice arises, a bill of particulars that lists specific property can provide

a criminal defendant all the notice he . . . is due"); [Docs. 34 & 54].  Accordingly, it is **RECOMMENDED** that Latorre's motion for return of seized property, [Doc. 48], be **DENIED**.

### III.  CONCLUSION

For the reasons stated, it is **RECOMMENDED** that Latorre's motion for return of seized U.S. currency, [Doc. 48], and his motion to suppress evidence, [Doc. 49], be **DENIED**.

There are no other motions pending before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of the trial. Accordingly, **IT IS ORDERED** and **ADJUDGED** that this action be, and the same is hereby, declared **CERTIFIED READY FOR TRIAL**.

**IT IS SO ORDERED** and **RECOMMENDED**, this 23rd day of November, 2020.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE